## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

_____

|  |  |  |
|---|---|---|
| GERALD E. BELL, and | ) | |
| DUANE V. BELL, et al., | ) | |
| Individually and as class representatives of | ) | |
| similarly situated individuals and | ) | |
| landowner entities, | ) | |
| | ) | Case No. 13-455 L |
| Plaintiffs, | ) | Hon. Patricia E. Campbell-Smith |
| | ) | |
| v. | ) | (E-Filed July 15, 2014) |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

_____ )

## UNITED STATES' OPPOSITION TO PLAINTIFFS' MOTION
## FOR CLASS CERTIFICATION

SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
JOSHUA A. DOAN
Trial Attorney
Environment & Natural Resources Division
United States Department of Justice
601 D Street, NW, Rm. 3135
Washington, D.C. 20004
202-305-0874
joshua.doan@usdoj.gov
Counsel for Defendant

OF COUNSEL:

Blake K. Harden
Attorney (Trade & Finance Section)
Office of Chief Counsel
U.S. Customs and Border Protection
1300 Pennsylvania Avenue, NW Room 4.4B
Washington, DC 20229

## TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     PROCEDURAL & FACTUAL BACKGROUND ............................................................2

III.    STANDARD FOR EVALUATING A MOTION FOR CLASS CERTIFICATION..........4

IV.     ARGUMENT ........................................................................................................6

      A.   Plaintiffs Have Failed to Meet Their Burden of Demonstrating that the Class Is So Numerous that Joinder Is Impracticable ..........................................6

      B.   Plaintiffs Have Not Met Their Burden of Proving that Common Issues Predominate ................................................................................................9

      C.   Plaintiffs Have Not Proved that Their Claims Are Typical of Those of the Class.........................................................................................................14

      D.   Plaintiffs Have Not Proved that a Class Action Is a Superior Means of Resolving this Dispute ..............................................................................16

V.      CONCLUSION.....................................................................................................18

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Abernethy v. United States*,
    108 Fed. Cl. 183 (2012) ...............................................................................................8

*Amchem Products Inc. v. Windsor*,
    521 U.S. 591 (1997) ...................................................................................................10

*Andrews v. United States*,
    108 Fed. Cl. 150 (2012) .............................................................................................11

*Askins v. United States*,
    113 Fed. Cl. 283 (2013) ...............................................................................................8

*Barnes v. United States*,
    68 Fed. Cl. 492 (2005) ...........................................................................................5, 16

*Califano v. Yamasaki*,
    442 U.S. 682 (1979) .....................................................................................................4

*Comcast Corp. v. Behrend*,
    133 S. Ct. 1426 (2013) .................................................................................................4

*Douglas R. Bigelow Trust v. United States*,
    97 Fed. Cl. 674 (2011) ............................................................................................4, 5

*Filosa v. United States*,
    70 Fed. Cl. 609 (2006) .................................................................................................6

*Fisher v. United States*,
    69 Fed. Cl. 193 (2006) ...............................................................................................10

*Gen. Tel. Co. of the Nw. v. EEOC*,
    446 U.S. 318 (1980) .....................................................................................................7

*Gen. Tel. Co. of the Sw. v. Falcon*,
    457 U.S. 147 (1982) ................................................................................................6, 10

*Goodrich v. United States*,
    63 Fed. Cl. 477 (2005) ..........................................................................................11-12

*Haggart v. United States*,
    89 Fed. Cl. 523 (2009) ............................................................................................6, 7

*Hutchens v. United States*,
    89 Fed. Cl. 553 (2009) ...................................................................................11

*Jaynes v. United States*,
    69 Fed. Cl. 450 (2006) .................................................................................7, 9

*Jenkins v. United States*,
    102 Fed. Cl. 598 (2011) .................................................................................12

*Moore v. United States*,
    63 Fed. Cl. 781 (2005) ............................................................................. 17-18

*Palazzolo v. Rhode Island*,
    533 U.S. 606 (2001) .......................................................................................12

*Pucciariello v. United States*,
    ---, Fed. Cl. -- 2014 WL 2446721 (June 2, 2014) .........................................11

*Quinault Allottee Association v. United States*,
    453 F.2d 1272 (Ct. Cl. 1972) ...........................................................................4

*Rasmuson v. United States*,
    91 Fed. Cl. 204 (Fed. Cl. 2010) ...........................................................5-7, 9, 17

*Singleton v. United States*,
    92 Fed. Cl. 78 (2010) .......................................................................................7

*Starr International Co. v. United States*,
    109 Fed. Cl. 628 (2013) .................................................................................16

*Testwuide v. United States*,
    56 Fed. Cl. 755 (2003) .....................................................................................7

*Turner v. United States*,
    115 Fed. Cl. 614 (2014) .................................................................................16

*United States v. Dow*,
    357 U.S. 17 (1958) .........................................................................................11

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ...........................................................................4-6, 10

*West Chelsea Buildings v. United States*,
    No. 11-333L, Order  (Fed. Cl. Oct. 11, 2011) ................................................5

## STATUTES

42 U.S.C. § 4654 ............................................................................................................17

## RULES

RCFC 23 ................................................................................ 4-6, 9, 14, 16, 18

## MISCELLANEOUS

*Black's Law Dictionary*, (9th ed. 2009)......................................................7

Manual for Complex Litigation, § 21.23 (4th ed. 2004) ..................................16

1 Newberg on Class Actions 3:13................................................................14

*The New Oxford American Dictionary,* 849 (2d ed.2005)..................................7

**UNITED STATES' MEMORANDUM IN OPPOSITION TO
PLANTIFFS' MOTION FOR CLASS CERTIFICATION**

## I.    INTRODUCTION

Defendant, the United States of America, respectfully responds to Plaintiffs' May 15,

2014, Motion for Class Certification [ECF No. 25] ("Pls.' Mot.") and the Memorandum in

Support thereof [ECF No. 25-1] ("Pls.' Mem. in Supp.").  In their Motion, Plaintiffs ask this

Court to certify an opt-in class composed of:

> [A]ll property owners who hold fee simple title to the land underlying the border
> fence infrastructure built by the Defendant along an approximate 22 mile stretch
> of land in Hidalgo County, Texas on the existing flood control levee maintained
> and operated by the U.S. International Boundary & Water Commission, so that
> they seek just compensation for the unconstitutional taking of their property for
> construction and operation of the aforementioned border fence infrastructure . . . .

Pls.' Mot. at 1; *see also* Pls.' Mem. in Supp. at 1.  Plaintiffs contend that this putative class

contains "at least 60 potential claimants," Pls.' Mem. in Supp. at 13, and they attach to their

Motion a list of 76 properties allegedly owned by those potential claimants, *see* Pls.' Mot., Ex.

G.

Plaintiffs fail to meet their burden of proving, by a preponderance of the evidence, that

the putative class satisfies the requirements of Rule 23 of the United States Court of Federal

Claims ("RCFC 23").  Specifically, Plaintiffs have failed to show that the class is so numerous

that joinder is impracticable, that common questions of law and fact predominate, that the claims

of the named plaintiffs are typical of those of members of the class, and that a class action is

superior to other available methods of adjudicating the claims of the putative class members.  As

to numerosity, Plaintiffs have not met their burden of showing that joinder is impracticable

because the Court of Federal Claims has handled substantially larger cases without using the

class mechanism, and because the putative class members are readily identifiable.  As to

1

commonality, Plaintiffs have not shown that common issues of law or fact predominate because the resolution of this case will require a property-specific determination of ownership of land underlying the structure at issue, a property-specific determination of the date of the alleged taking; a property-specific review of the relevant deeds conveying easement rights to the United States, and, if this Court finds the United States liable for a taking, a property-specific determination of just compensation.  The named plaintiffs have not proved that their claims are typical of those of the putative class members because the named plaintiffs have not demonstrated that the deeds through which the United States acquired easements over their properties contain the same language as the deeds of the other putative class members.  In addition, the named plaintiffs failed to prove that their properties are typical of those owned by the putative class or that the alleged access issues they face are typical of those of other class members.  Finally, Plaintiffs have not proved that a class action is superior to other available methods of adjudicating the claims of the putative class members because this Court will need to make the property-specific determinations discussed above regardless of whether this case proceeds by joinder, consolidation, or class certification.  Therefore, Plaintiffs' Motion should be denied.

## II.    PROCEDURAL & FACTUAL BACKGROUND

On July 3, 2013, Plaintiffs Gerald E. Bell, Duane V. Bell, Joe Metz, Neuhaus & Sons, and Bell Brothers (the "named Plaintiffs"), filed this inverse condemnation action on their own behalf and on behalf of a putative class of similarly situated individuals and entities.  *See* Compl. [ECF No. 1] at 1.  In their Complaint, Plaintiffs allege that they "own fee simple interests in real property in Hidalgo County, Texas along, at or near the Rio Grande River and the border between Mexico and the United States," and that the United States "has built a border fence on

or at Plaintiffs' properties leaving considerable acreage on the 'river' or 'Mexican' side of the border fence[,] significantly impacting Plaintiffs' access, current use, and the property's highest and best use." *Id.* ¶ 2.[1]  Plaintiffs further allege that the construction of what they call a "border fence" on and through their properties began "[i]n or about 2009 or 2010," but that "construction is not complete, as there remain openings where gates are said to be planned to be constructed and installed." *Id.* ¶ 13.  Plaintiffs also allege that "[f]or some of the Plaintiff landowners, there are no openings on their property allowing Plaintiffs access to their land on the river side of the border fence," while "[i]n other instances, there are openings located in the border fence on [a] Plaintiff's property purportedly where gates may be installed. . . ." *Id.* ¶ 14.

On October 24, 2013, the United States filed an Answer, in which it disputed many of the factual allegations in Plaintiffs' Complaint.  *See* ECF No. 10.  For example, the United States denies that the structure at issue in this case is merely a "border fence."[2]  Instead, the United States explained, the structure is a concrete retaining wall, built to various heights in accordance with Federal Emergency Management Administration flood-control standards, that sits within the physical footprint of an existing flood-control easement held by the United States International Boundary and Water Commission ("USIBWC").  Answer, ¶ 13.  Some segments of the retaining wall have bollard fencing on top of them, while others do not.  *Id.*  The United States further denies that construction of the structure began in 2009 or 2010, and instead

---

[1] The United States includes these allegations here for background purposes only.  The United States denies all allegations in Plaintiffs' Complaint, including those repeated in Plaintiffs' Motion and Memorandum in Support, except to the extent that the United States expressly admitted an allegation in its Answer.

[2] Plaintiffs now appear to agree, noting that the structure at issue was built "for the **dual purpose** of securing the international border . . . **and to prevent catastrophic flooding**," Pls.' Mem. in Supp. at 8 (emphasis added).  Because, as Plaintiffs acknowledge, the structure at issue is designed to serve a flood-control purpose, Plaintiffs' assertion that "the border fence built on Plaintiffs' property is in large part consistent with the border fence constructed in adjoining Cameron and Starr Counties" is incorrect.  Pls.' Mem. in Supp. at 9.

explained that a contractor retained by Hidalgo County began building it in 2008 to replace portions of an earthen levee that stood within the USIBWC's easement. *Id.*[3] The United States also denies that construction of the structure is incomplete, but it admits that there remain openings in the fencing portion of the structure where gates will be constructed and installed. *Id.*

## III.   STANDARD FOR EVALUATING A MOTION FOR CLASS CERTIFICATION

The Supreme Court has emphasized in recent opinions that "[t]he class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)); *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011) (same). "To come within the exception, a party seeking to maintain a class action 'must affirmatively demonstrate his compliance' with Rule 23." *Comcast*, 133 S. Ct. at 1432 (quoting *Wal-Mart*, 131 S. Ct. at 2551-52).

Under RCFC 23(c)(1)(A), "[a]t an early practicable time after a person sues as a class representative, the court must determine by order whether to certify the action as a class action."[4] The court may certify a class action only if:

(1)   the class is so numerous that joinder of all members is impracticable;

(2)   there are questions of law or fact common to the class;

---

[3] The United States now believes that construction of two of the ten segments of the structure in Hidalgo County began in January and February 2009, rather than in 2008.  Construction of the other eight segments began in 2008.

[4] Throughout their Memorandum in Support, in addition to citing RCFC 23, Plaintiffs reference *Quinault Allottee Ass'n v. United States*, 453 F.2d 1272 (Ct. Cl. 1972), which sets forth criteria that guided the Court of Federal Claims' decisions on class certification before RCFC 23 was "completely rewritten" in 2002.  *See* RCFC 23, Rules Committee Notes, 2002 Rev.  The revised rule incorporates the *Quinault* criteria, *see id.*, but "to the extent that a direct conflict arises between *Quinault* and RCFC 23, RCFC 23 controls."  *Douglas R. Bigelow Trust v. United States*, 97 Fed. Cl. 674, 676 n.3 (2011) (citations omitted).  The United States does not discern any conflict in this case, but submits that the decision as to whether to certify a class should be analyzed under RCFC 23.

(3)     the claims or defenses of the representative parties are
typical of the claims or defenses of the class; and

(4)     the representative parties will fairly and adequately protect
the interests of the class.

RCFC 23(a).  "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the

class whose claims they wish to litigate."  *Wal-Mart*, 131 S. Ct. at 2550 (addressing Fed. R. Civ.

P. 23(a)).  The Rule's requirements "effectively limit the class claims to those fairly

encompassed by the named plaintiff's claims."  *Id.*  (internal quotation marks and citations

omitted).  In addition to satisfying RCFC 23(a), the moving party must establish that "the United

States has acted or refused to act on grounds generally applicable to the class," and the court

must find "that the questions of law or fact common to class members *predominate* over any

questions affecting only individual members, and that a class action is superior to other available

methods for fairly and efficiently adjudicating the controversy."  RCFC 23(b)(2)-(3) (emphasis

added).

As the Court of Federal Claims has explained, the criteria set forth in RCFC 23(a) and

(b):

> can be grouped into five categories: (i) **numerosity**—a class so large that joinder
> is impracticable; (ii) **commonality**—in terms of the presence of common
> questions of law or fact, the predominance of those questions, and the treatment
> received by the class members at the hands of the United States; (iii) **typicality**—
> that the named parties' claims are [typical] of the class; (iv) **adequacy**—relating
> to fair representation; and (v) **superiority**—that a class action is the fairest and
> most efficient way to resolve a given set of controversies.

*Rasmuson v. United States,* 91 Fed. Cl. 204, 210 (Fed. Cl. 2010) (quoting *Barnes v. United*

*States,* 68 Fed. Cl. 492, 494 (2005)) (emphasis in original).  "These requirements are in the

conjunctive; hence, the failure to satisfy any one of them is fatal to a class certification."

*Douglas R. Bigelow Trust*, 97 Fed. Cl. at 676; *West Chelsea Buildings v. United States*, No. 11-

333L, Order [ECF No. 22] at 7-8 (Fed. Cl. Oct. 11, 2011) ("if the plaintiffs fail to meet their

burden with regard to any one of the five factors, their motion for class certification must be denied").

The Supreme Court has made clear that "Rule 23 does not set forth a mere pleading standard." *Wal-Mart*, 131 S. Ct. at 2551. Instead, a "party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.* (emphasis in original). The Supreme Court has recognized that "it may be necessary for the court to probe behind the pleadings" and that "certification is proper only if 'the trial court is satisfied after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Id.* (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160-61 (1982)). "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim" because "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.* (internal quotations and citations omitted). Thus, "to certify a class, plaintiffs must establish, by a preponderance of the evidence, that the proposed action satisfies each of the five elements" of RCFC 23. *Haggart v. United States*, 89 Fed. Cl. 523, 530 (2009) (citing *Filosa v. United States*, 70 Fed. Cl. 609, 615 (2006)); *accord Rasmuson*, 91 Fed. Cl. at 210.

## IV.    ARGUMENT

### A.    Plaintiffs Have Failed to Meet Their Burden of Demonstrating that the Class Is So Numerous that Joinder Is Impracticable.

To satisfy the first element of RCFC 23(a), Plaintiffs must prove that the class is "so numerous that joinder of all members is impracticable." *See also Wal-Mart*, 131 S. Ct. at 2551 (Plaintiffs' burden is to "prove that there are *in fact* sufficiently numerous parties" such that the action requires class treatment. (discussing Fed. R. Civ. P. 23(a)) (emphasis in original)). As the

Court of Federal Claims has explained, in interpreting RCFC 23's first element, "[w]hile 'impracticable' does not mean 'impossible,' the standard remains high.  'Impracticable' means '*impossible in practice* to do or carry out.'"  *Rasmuson*, 91 Fed. Cl. at 215 (quoting *Haggart*, 89 Fed. Cl. at 530; *The New Oxford American Dictionary* 849 (2d ed. 2005)) (emphasis added by court); *cf. Black's Law Dictionary* (9th ed. 2009) (defining impracticability as "[a] fact or circumstance that excuses a party from performing an act, esp. a contractual duty, because (though possible) it would cause extreme and unreasonable difficulty").  Whether joinder is practicable is a case-specific, fact-bound inquiry.  *See, e.g.*, *Jaynes v. United States,* 69 Fed. Cl. 450, 454 (2006).  There is "no magic number, that once attained, triggers a presumption of numerosity.'"  *Singleton v. United States*, 92 Fed. Cl. 78, 83 (2010) (quoting *Rasmuson*, 91 Fed. Cl. at 216) (internal quotation marks omitted); *see Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 330 (1980) ("The numerosity requirement [of Fed. R. Civ. P. 23] requires examination of the specific facts of each case and imposes no absolute limitations.").

Plaintiffs have not proved that joinder is impossible in practice for a putative class that contains only 60 members and 76 properties, and precedent shows that joinder is practicable here.  *See* Pls.' Mem. in Supp. at 13; Pls.' Mot., Ex. G.  The Court of Federal Claims has handled cases that were larger—sometimes substantially so—through joinder and consolidation, rather than through the class-action mechanism.  For example, in *Jaynes*, the Court of Federal Claims declined to certify a class with 256 putative members, finding that joinder was practicable.  *See Jaynes*, 69 Fed. Cl. at 456.  In *Testwuide v. United States*, 56 Fed. Cl. 755 (2003), the court denied certification of a putative class alleging a taking based on operations by F/A-18 C/D aircraft at Naval Air Station Oceana and Naval Auxiliary Land Field Fentress.  Following that denial of class certification, the same plaintiffs' counsel filed eight other cases based on the same

alleged operations, and seven of those cases were formally consolidated with *Testwuide*. *See Abernethy v. United States*, 108 Fed. Cl. 183, 185 (2012) (describing procedural history of the *Testwuide* litigation). Those "nine cases together involved approximately 3,400 plaintiffs and 2,100 properties." *Abernethy*, 108 Fed. Cl. at 185. As with the *Testwuide* litigation, the court is handling *Abernethy*, a case alleging a taking by "more than 1,900 individuals who own more than 1,370 properties" based on the same operations as *Testwuide*, without employing the class mechanism. *Id.*[5]

Even within the context of Trails Act cases, on which Plaintiffs heavily rely, *see* Pls.' Mem. in Supp. at 13, the Court of Federal Claims has frequently handled cases with larger putative classes than this one without certifying a class. *See, e.g.*, *Dana R. Hodges Trust v. United States*, No. 09-289 L (Fed. Cl. filed May 7, 2009) (involving claims of more than 100 property owners on a 24.7-mile rail corridor in Michigan); *Winder v. United States*, No. 08-324 L (Fed. Cl. filed May 1, 2008) (representing lead case of four consolidated cases involving more than 100 parcels on a 15.93-mile rail corridor in southwestern Missouri); *Rogers v. United States*, No. 07-273 L (Fed. Cl. filed May 1, 2007) (involving claims of 317 plaintiffs on a 12.5-mile rail corridor in Florida).[6]

Other factors that the Court of Federal Claims considers in evaluating numerosity, such

---

[5] *Askins v. United States*, No. 07-650 L, a companion case to *Abernethy*, was filed as a putative class action, but the Court of Federal Claims invoked the anti-stacking doctrine to strike the class allegations. *See Askins v. United States*, 113 Fed. Cl. 283, 284-85 (2013). *Askins*, which involves five properties, has been consolidated with *Abernethy* for discovery and trial.

[6] The plaintiffs in *Rogers* filed their action originally as a class action, estimating that potential class members could exceed 500 property holders. *See Rogers*, No. 07-273 L, Pls.' Mot. to Join Class Members Submitting Entries of Appearance as Additional Pls. Pursuant to RCFC 20(A)(1) [ECF No. 101], ¶ 1 (Fed. Cl. Aug. 31, 2009) ("Mot. to De-Certify"). In November 2007, the court certified a class in *Rogers*. *See id.* ¶ 3. Subsequent to class certification, however, the plaintiffs in *Rogers* concluded that it was more appropriate for the case to proceed using joinder rather than the class-action mechanism, and requested that the court de-certify the class. *See id.* ¶ 13.

as "the ease of identifying [class] members and ascertaining their addresses," and the class

members' "geographic dispersion," also show that joinder is practicable here. *Jaynes*, 69 Fed.

Cl. 454; *see also Rasmuson*, 91 Fed. Cl. at 216.  Plaintiffs contend that the putative class

members own property along a 22-mile stretch in a single Texas county, *see* Pls.' Mem. in Supp.

at 1; that "the vast majority reside in the immediate area of the property in question while most

others reside in Texas," *id*. at 13; and that "the vast majority of members are readily identifiable

through property tax records," *id*.  In *Jaynes*, the court declined to certify a putative class of 256

members where "at least 81 percent of the class members reside[d] within the same state," and

the contact information for the class members was readily ascertainable.  *Jaynes*, 69 Fed. Cl. at

454-55; *see also Rasmuson*, 91 Fed. Cl. at 216 ("The vast majority of potential plaintiffs reside

in close geographic proximity to each other and the land at issue in this case," and "the potential

Plaintiffs who reside outside of the state of Iowa appear to be readily available through a search

of public records.").  For the same reasons, this Court should decline to certify the significantly

smaller putative class here.

Because RCFC 23's requirements are conjunctive, and Plaintiffs have failed to meet their

burden of proving numerosity, this Court should deny Plaintiffs' Motion.

### B.      Plaintiffs Have Not Met Their Burden of Proving that Common Issues Predominate.

The requirement of commonality is built into RCFC 23 in two places.  First, the

prerequisites set forth in RCFC 23(a) include the requirement that "there are questions of law or

fact common to the class."   In addition, if the prerequisites of RCFC 23(a) are met, a plaintiff

seeking class certification must also satisfy RCFC 23(b)(3), which requires that "the questions of

law or fact . . . predominate over any questions affecting only individual members . . . ."  "The

predominance criterion is far more demanding" than the commonality requirement of Rule 23(a).

*Fisher v. United States*, 69 Fed. Cl. 193, 201-02 (2006) (quoting *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 624 (1997)).

In *Wal-Mart*, the United States Supreme Court directly addressed the requirement of commonality in Fed. R. Civ. P. 23(a).  The Supreme Court explained that "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart*, 131 S. Ct. at 2551 (quoting *Falcon*, 457 U.S. at 157).  The Supreme Court, however, cautioned that commonality "does not mean *merely* that they have all suffered a violation of the same provision of law."  *See id.* (emphasis added).  Indeed, the Supreme Court recognized that the law at issue, Title VII, could be violated in many ways, such as intentional discrimination, hiring and promotion practices that have a disparate impact, and the use of these practices by different managers in a company.  *Id.*  But the Supreme Court rejected the idea that "the mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate-impact Title VII injury" could satisfy the commonality prong.  *Id.*  Instead, the Supreme Court held that plaintiffs' "claims must depend upon a common contention . . . ."  *Id.* (explaining that, in the Title VII context, this "common contention" could be satisfied by the "assertion of discriminatory bias on the part of the same supervisor").  The Supreme Court explained that the common contention "must be of such a nature that it is capable of classwide resolution—which means that **determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke**."  *Id.* (emphasis added); *see also id.* ("Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." (citation omitted)).

Plaintiffs have not proved that common issues of law and fact predominate here. Although all class members allege a taking based on the construction of the "dual purpose"

structure on their properties in Hidalgo County, Texas, they cannot overcome the numerous dissimilarities among their claims, which will require this Court to evaluate their claims on a property-by-property basis, rather than on a class-wide basis. As an initial matter, each putative class member must demonstrate his or her ownership of an interest in the property allegedly taken on the date of the alleged taking. *See Pucciariello v. United States*, --- Fed. Cl. ----, No. 13–590 C, 2014 WL 2446721, at *19 (June 2, 2014) ("the existence of a cognizable property interest is a threshold requirement for a valid takings claim"); *Andrews v. United States*, 108 Fed. Cl. 150, 157-58 (2012) ("It is the owner at the time of the taking rather than the owner at an earlier or later date who has the takings claim and is to receive payment." (quoting *United States v. Dow*, 357 U.S. 17, 22 (1958)) (internal punctuation omitted)); *accord* Pls.' Mem. in Supp. at 20 ("To maintain a claim, each class member needs to own a compensable property interest in the land under the border fence."). This inquiry is inherently property-specific and cannot be resolved on a class-wide basis, because each proposed class member will need to show, by deeds, maps, and other documentation, that he or she owned the land underlying the USIBWC's easement on which the structure at issue was built, at the time of the alleged taking. *See id*. ("Determining landowners' interests involves review of the deeds and related ownership documents for each parcel.").

Determining the date of alleged taking, which is relevant to standing to bring a claim and, if the Court must reach the issue, just compensation, will also be property-specific. Plaintiffs allege a physical taking. *See id*. at 9. As the Court of Federal Claims has explained, "[a] takings claim under the Fifth Amendment accrues when the taking occurs." *Hutchens v. United States*, 89 Fed. Cl. 553, 561 (2009). "[A] physical taking occurs when the government encroaches upon or occupies private land for its own proposed use . . . ." *Goodrich v. United States*, 63 Fed. Cl.

477, 480 (2005) (quoting *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001)) (internal

quotation marks omitted).  This Court will need to resolve that question on a property-by-

property basis, because the accrual date will turn on when construction began on each property.

Plaintiffs contend that construction began during the course of two calendar years, "[i]n or about

2009 or 2010," *see* Pls.' Mem. in Supp. at 8, and the United States contends that construction

began in 2008 and early 2009, *see* pages 3-4, *supra*.  But regardless of which party is correct, the

date of the alleged taking will not necessarily be the same for all properties, and the accrual dates

might vary considerably, particularly if Plaintiffs are able to prove that construction began during

two calendar years.  This case, therefore, is unlike cases alleging a taking in the Trails Act

context, because in those cases the claims arise, on class-wide basis, on the same date, namely

the date on which the Surface Transportation Board issues a Notice of Interim Trail Use.  *See*

*Jenkins v. United States*, 102 Fed. Cl. 598, 615-16 (2011).

　　　Those proposed class members who are able to show that they owned an interest in the

property underlying the USIBWC's easement on the date of the alleged taking will confront

further dissimilarities in attempting to prove that the United States is liable for a taking.  The

United States' liability will likely turn, in large part, on the scope of the easement that the

USIBWC holds.  The United States received that easement from Hidalgo County.  *See* Pls.'

Mem. in Supp. at 8; Pls.' Mot., Exs. C-1 to C-4.  Plaintiffs contend that this Court must also

consider the instruments through which Hidalgo County received its interest in the property from

Plaintiffs' alleged predecessors-in-interest.  *See* Pls.' Mem. in Supp. at 7-8.  Plaintiffs attach

several of those documents as Exhibits B-1 to B-4 of their motion.  To the extent that Plaintiffs

are correct, and this Court must examine these types of documents in order to determine the

scope of the easement held by the United States, even a cursory review of Exhibits B-1 to B-4

reveals differences among the language of the instruments.  Although Exhibits B-1 and B-2 appear to be similar to each other—and both grant the grantee the right to build "fences," among other rights—Exhibit B-3 contains different language, and Exhibit B-4 is a judgment in condemnation.[7]  This Court, in other words, would not be examining a single deed to resolve, in one stroke, the scope of the easement rights that the United States holds over all proposed class members' properties.

If this Court finds the United States liable for taking an interest in any Plaintiff's property, it will then need to conduct a property-specific inquiry into the amount of the just compensation to which such a Plaintiff is entitled.  The United States agrees with Plaintiffs that the traditional method of determining just compensation for a partial taking, such as the taking of an easement, is "the *before* and *after* method . . . in which the fair market value of the **landowner's** whole parcel" before the taking is compared with the fair market value of the parcel after the taking.  Pls.' Mem. in Supp. at 9 (emphasis added); *see also id.* at 21.  The value of the landowner's whole parcel will, of course, vary on a parcel-by-parcel basis.  Plaintiffs have introduced no evidence to suggest that all parcels in this case are the same and, in fact, Exhibit G to Plaintiffs' Motion suggests that the parcels vary in size and in their current uses.  *See also* Pls.' Mem. in Supp. at 14 ("Here, the properties vary in size from several acres to several hundred acres.").

---

[7] The deeds from Hidalgo County to the United States all include a grant of a right to build fences.  *See* Pls.' Mot., Exs. C-1 to C-4.  To be clear, the United States will not be relying solely on such a grant to prove that the structure at issue in this case is within the scope of the United States' easement.  The structure at issue in this case is within the scope of the United States' easement because it serves a flood-control purpose.  If the United States also received the right to build fences within the geographic footprint of its flood-control easement, such a right would provide an additional basis for avoiding liability under the Fifth Amendment's Just Compensation Clause.

Because the putative class members' claims are rife with dissimilarities, Plaintiffs have not met their burden of demonstrating that common issues of law and fact predominate, and this Court should deny class certification for that reason alone.

**C.      Plaintiffs Have Not Proved that Their Claims Are Typical of Those of the Class.**

Typicality is another prerequisite for class certification.  To satisfy this requirement, Plaintiffs must show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]"  RCFC 23(a)(3); *see also* 1 Newberg on Class Actions 3:13 ("The typicality prerequisite assures that the class representative shares the issues common to other class members.  Thus, to some extent, it overlaps with the Rule 23(a)(2) requirement that there be questions of law or fact common to the class, except each test proceeds from a different perspective.").  Plaintiffs have not met that burden here for four reasons.

First, Plaintiffs have not shown that the relevant deeds for the named Plaintiffs are typical of the deeds for the other proposed class members.  Indeed, Plaintiffs have not even offered this Court the deeds relevant to the other proposed class members' properties, and the four instruments that they have offered this Court, as Exhibits B-1 to B-4, have language that varies.  Thus, if Plaintiffs are correct that the deeds conveying an interest from the individual landowners to Hidalgo County are relevant to the scope of the property rights held by the United States, Plaintiffs have not met their burden of showing that the named Plaintiffs' deeds are typical.

Second, Plaintiffs have not proved that the named Plaintiffs' properties are typical of those owned by the other proposed members, which would be relevant if this Court must reach the issue of just compensation.  Plaintiffs contend that "the majority of these claims involve

tracts of less than 5 acres where the actual taking is even less." Pls.' Mem. in Supp. at 23.[8]

According to Exhibit G, the named Plaintiffs all own substantially more than five acres.

Plaintiffs Gerald & Duane Bell are identified as owning a 17.8-acre parcel, *see* Ex. G at 1;

Plaintiff Joe Metz is identified as owning an 80-acre parcel, *see* Ex. G at 4; and Plaintiff Neuhaus

& Sons is identified as owning three parcels totaling 750 acres, *see* Ex. G at 6.

Third, Plaintiffs have introduced no evidence showing that the date of the alleged taking

for the named Plaintiffs is typical of the date of the alleged taking for the proposed class

members.  Plaintiffs do not even identify the date(s) on which construction began on the named

Plaintiffs' properties, let alone the dates on which construction began on each of the proposed

class members' properties.  Plaintiffs instead merely assert that construction began in all cases in

2009 or 2010.

Fourth, Plaintiffs have not proved that any alleged access issues are present on the named

Plaintiffs' properties.[9]  Plaintiffs contend that "some parcels have openings in the border fence

for gates and some do not," and they argue that the presence or absence of gates is relevant to the

question of "remainder damages," but they offer no indication of whether the named Plaintiffs'

parcels have gate openings.  *See* Pls.' Mem. in Supp. at 21.

Plaintiffs, therefore, have not shown that the claims of the named Plaintiffs are typical of

the proposed class on issues related both to liability and to just compensation, and this Court

should deny class certification for that reason alone.

---

[8] Plaintiffs' assertion is not obviously correct.  Of the 76 parcels identified on Exhibit G to
Plaintiffs' Motion, only 26 are identified as being five acres or less in size.

[9] The United States expressly denies that any named Plaintiff or proposed class member has been
denied access to property on the "river" side of the structure at issue as a result of that structure's
construction.

**D.      Plaintiffs Have Not Proved that a Class Action Is a Superior Means of Resolving this Dispute.**

A plaintiff seeking class certification must establish that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  RCFC 23(b)(3). To determine whether superiority is met, courts engage in "a cost/benefit analysis, weighing any potential problems with the manageability or fairness of a class action against the benefits to the system and the individual members likely to be derived from maintaining such an action." *Starr Int'l Co. v. United States*, 109 Fed. Cl. 628, 636 (2013) (quoting *Barnes*, 68 Fed. Cl. at 499). The focus of this analysis is on the comparative advantages of a class action suit over the other vehicles for bringing suit that are available to the plaintiffs. *See Turner v. United States*, 115 Fed. Cl. 614, 617 (2014).  In particular, "[t]he creation of a number of subclasses . . . in a Rule 23(b)(3) suit, may defeat the superiority requirement" by splintering the proposed class and thereby diminishing the relative value of a class action over other forms of litigation. *See* Manual for Complex Litigation, § 21.23 (4th ed. 2004).

Plaintiffs have not met their burden of proving superiority because the class-action mechanism offers no efficiencies that joinder of additional Plaintiffs (through the filing of Amended Complaints or otherwise) and consolidation of cases would not.  This Court must address certain questions, on a property-by-property basis, regardless of whether it certifies a class.  As discussed above, those questions include (a) when the alleged taking occurred; (b) whether each proposed class member owned property underlying the USIBWC's flood-control easement (on which the structure at issue was built) on the date of the alleged taking; (c) the scope of the easement rights that the United States holds over each property; and (d) if it finds the United States liable for a taking, the amount of just compensation to which any prevailing

plaintiff is entitled, which would require an inquiry into the amount by which the structure at issue has (allegedly) diminished the value of each property.

Furthermore, the choice that Plaintiffs present as one between a class action and 60 individual cases is false.  *See* Pls.' Mem. in Supp. at 24.  Multiple plaintiffs can participate in the same case, as the named Plaintiffs have done here by filing a single complaint despite owning different properties.  If multiple complaints are filed, the parties can consider whether consolidation is appropriate.  Indeed, *Testwuide* and *Abernethy* show that the Court of Federal Claims can handle non-class actions involving properties numbering into the thousands, through the selection of test-plaintiff properties for discovery and trial.  *See Abernethy v. United States*, No. 07-651L, Joint Status Report [ECF No. 73] (Fed. Cl. Apr. 9, 2014) (identifying 12 test-plaintiff properties among the 1,300-plus properties in the case); *Testwuide v. United States*, No. 01-201L, Joint Status Report [ECF No. 103] (Fed. Cl. Dec. 16, 2004) (identifying test plaintiffs).

Nor does the size of the (alleged) claims in this case militate in favor of class certification.  Plaintiffs contend that "[i]ndividual recovery for those with smaller tracts would be quite small and eaten up with individual litigation costs, including appraisal fees, customary litigation expenses, and attorneys' fees."  *See* Pls.' Mem. in Supp. at 14.[10]  Because Plaintiffs have requested reimbursement of their attorneys' fees and litigation costs under the Uniform Relocation Assistance and Real Property Acquisition Act, 42 U.S.C. § 4654(c), any successful plaintiffs would be entitled to reimbursement for all reasonable attorneys' fees and litigation costs.  *See* Compl. ¶ 4; *see also Moore v. United States*, 63 Fed. Cl. 781, 788 (2005) ("Landowners are entitled under the statute to reimbursement for a reasonable attorney fee on the

---

[10] Plaintiffs make that argument in their discussion of numerosity.  The United States submits that such an argument should instead be considered as part of the inquiry into superiority.  *See Rasmuson*, 91 Fed. Cl. at 216-17.

theory that making the landowner suffer that expense would leave him or her with only partial compensation.").

Because Plaintiffs failed to show that a class action is superior to other means of resolving this case, this Court should deny Plaintiffs' motion.[11]

## V.    CONCLUSION

The failure to satisfy any one of the five requirements for class certification set forth in RCFC 23(a) and RCFC 23(b) is fatal to a motion for class certification.   Here, Plaintiffs have not met their burden of proof on four of those five elements, namely numerosity, commonality, typicality, and superiority.   This Court, therefore, should deny Plaintiffs' Motion.


Respectfully submitted,

SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
/s/ Joshua A. Doan
JOSHUA A. DOAN
Environment & Natural Resources Division
United States Department of Justice
601 D Street, NW, Rm. 3135
Washington, D.C. 20004
202-305-0874
joshua.doan@usdoj.gov
Counsel for Defendant

July 15, 2014

---

[11] If this Court determines that Plaintiffs have satisfied the requirements of RCFC 23(a) and (b) and certifies a class, it must appoint class counsel.  Putting aside the objections to class certification discussed above, the United States does not object to the appointment of Ms. Loessin and Mr. Brandys as class counsel.  The United States notes, however, that RCFC 23(g)(1)(C) also provides that this Court may order potential class counsel "to propose terms for attorney's fees and nontaxable costs" and this Court may include provisions regarding the award of attorneys' fees and costs in the order appointing class counsel.  Plaintiffs' Motion does not include any such proposed terms for this Court's consideration.

OF COUNSEL:
Blake K. Harden
Attorney (Trade & Finance Section)
Office of Chief Counsel
U.S. Customs and Border Protection
1300 Pennsylvania Avenue, NW Room 4.4B
Washington, DC 20229